UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 14-50013-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | DISMISS |
| | ) | |
| JUSTIN JANIS, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Defendant Justin Janis was indicted for the offense of assaulting a federal officer in violation of 18 U.S.C. § 111. (Docket 1). Mr. Janis filed a motion to dismiss the indictment asserting that at the time of the alleged offense Oglala Sioux Tribal Officer Mousseau was not a federal officer under § 111. (Docket 27). Specifically, Mr. Janis argues Officer Mousseau "was not acting as a federal officer at the time of the assault; she was there acting as a tribal officer enforcing tribal law." Id. at pp. 3-4. The government resists the motion. (Docket 30). For the reasons stated below, the defendant's motion to dismiss is denied.

## ANALYSIS

The indictment in pertinent part charges:

On or about November 27, 2013, near Kyle, in the District of South Dakota, the defendant, Justin Janis, willfully did forcibly assault, resist, oppose, impede, intimidate, and interfere with Officer Ann Mousseau, a law enforcement officer employed by the

>Oglala Sioux Tribe Department of Public Safety, pursuant to 25 U.S.C. § 2804, and engaged in acts involving physical contact with Officer Mousseau, while Officer Mousseau was engaged in the performance of her official duties, all in violation of 18 U.S.C. § 111.

(Docket 1).

"Whether [a tribal law enforcement officer] was a federal officer within the meaning of § 111 [is] a question of law for the court." United States v. Drapeau, 644 F.3d 646, 653 (8th Cir. 2011). "Whether [a tribal law enforcement officer] was acting as a federal officer and whether he was performing federal 'investigative, inspection, or law enforcement functions' at the time of the assault or acting outside the scope of his employment, [are] fact questions for the jury." Id.

The Secretary of the Department of the Interior "acting through the Bureau [of Indian Affairs], shall be responsible for providing, or for assisting in the provision of, law enforcement services in Indian country . . . ." 25 U.S.C. § 2802(a). "[T]he Secretary shall establish procedures to enter into memoranda of agreement for the use (with or without reimbursement) of the personnel or facilities of a . . . tribal . . . agency to aid in the enforcement or carrying out in Indian country of a law of either the United States or an Indian tribe that has authorized the Secretary to enforce tribal laws." 25 U.S.C. § 2804(a)(1).

The Secretary is charged with "develop[ing] minimum requirements to be included in special law enforcement commission agreements . . . ." 25 U.S.C. § 2804(a)(3)(B)(i).  "Each agreement . . . shall reflect the status of the applicable certified individual as a Federal law enforcement officer . . . acting within the scope of the duties described in section 2802(c) . . . ." 25 U.S.C. § 2804(a)(3)(B)(ii).  "While acting under authority granted by the Secretary under subsection (a) . . . a person who is not otherwise a Federal employee shall be considered to be . . . an employee of the Department of the Interior only for purposes of . . . section[] 111 . . . of Title 18 . . . ." 25 U.S.C. § 2804(f).  This type of law enforcement agreement is commonly referred to as a "638 contract," referring to the public law number authorizing such an arrangement.[1]  United States v. Schrader, 10 F.3d 1345, 1350 (8th Cir. 1993).

There are two methods by which a tribal officer may be considered a federal officer under § 111.  First, in the absence of a 638 contract, "a tribal officer who has been designated as a Deputy Special Officer of the BIA is a federal officer within the meaning of § 111 when performing the federal duties he or she had been deputized to perform, typically, the enforcement of certain federal criminal laws on the Tribe's reservation."  United States v.

---

[1]Defendant initially labels the law enforcement contract a "689 contract." (Docket 27 at p. 3).  In his reply brief Mr. Janis properly identifies the contract a "638 contract."  (Docket 40 at p. 2).

Bettelyoun, 16 F.3d 850, 853 n. 2 (8th Cir. 1994) (referencing United States v. Oakie, 12 F.3d 1436, 1439-40 (8th Cir. 1993)). Second, pursuant to a 638 contract, "the Secretary may also authorize a tribal officer to perform law enforcement functions that BIA would otherwise perform. . . . When acting under such authority, 'a person who is not otherwise a Federal employee shall be considered to be an employee of the Department of the Interior only for purposes of . . . section[] 111 . . . of Title 18.' " Bettelyoun, 16 F.3d at 852 (citing 25 U.S.C. § 2804(f); referencing Schrader, 10 F.3d at 1350-51). "When a 638 contract meets the definition of a § 2804(a) agreement, and when tribal officers designated under that contract enforce laws that BIA officers would otherwise enforce, § 2804(f) expressly provides that those tribal officers are afforded the same protection under 18 U.S.C. § 111 that Congress has afforded BIA employees. This is so regardless of whether the officer is enforcing a tribal, state, or federal law, so long as he is engaged in the performance of his official duties rather than a personal frolic of his own. . . . That is the plain meaning of § 2804(f). It is also consistent with the purpose of § 111 to protect *both* federal officers and federal functions." Schrader, 10 F.3d at 1350-51 (internal quotation marks and citations omitted, emphasis in original). Under Bettelyoun, a tribal officer operating under a 638 contract and enforcing tribal laws "is a federal officer for purposes of § 111 . . . ." Bettelyoun, 16 F.3d at 853.

In this case, it is undisputed that pursuant to section 2804(a) the Secretary entered into a 638 contract with the Oglala Sioux Tribe Public Safety Commission ("OSTPSC"). (Dockets 30 at p. 3; 40 at p. 2). Under this 638 contract the BIA's tribal law enforcement duties are delegated to the OSTPSC.[2]  See Schrader, 10 F.3d at 1350. "[W]hen tribal officers designated under [a 638] contract enforce laws that BIA officers would otherwise enforce, § 2804(f) expressly provides that those tribal officers are afforded the same protection under 18 U.S.C. § 111 that Congress has afforded BIA employees." Id.

Mr. Janis asserts the events leading up to the alleged assault upon Officer Mousseau involved the officer's response to a citizen's complaint of "Jeff Janis, Sr.[,] and Justin Janis were 'drunk' and [the complaining citizen] wanted them removed from the residence." (Docket 27 at pp. 1-2). The government does not dispute this version of the facts. (Docket 30 at p. 13). Officer Mousseau "was acting within the scope of her duties, responding to a call related to violation of tribal law . . . ." Id.  In other words, Officer Mousseau was investigating alleged tribal offenses—"namely 'liquor violation[s],' 'intoxicated person[s],' and 'disorderly conduct'—at the time the alleged assault occurred." (Docket 27 at pp. 4-5).

---

[2]This 638 contract delegated the BIA's authority to enforce the Oglala Sioux Tribal Law and Order Code to the Oglala Sioux Tribe Public Safety Commission. (Docket 34-2 at pp. 6-9 [Sections 1 & 2]).

Defendant argues Officer Mousseau was not acting under the 638 contract,[3] but rather "Officer Mousseau was acting as a tribal officer enforcing tribal, not federal, laws." (Docket 40 at pp. 2-3). Mr. Janis contends the 638 contract does not require tribal officers to enforce tribal laws but allows them to assist the BIA in enforcing federal laws. Id. at p. 3.

The OSTPSC 638 contract in effect on November 27, 2013, addresses the issue before the court. See Dockets 34-1, 34-2 & 34-3.[4] The contract declares "[b]y executing this Contract, [OSTPSC] is agreeing to provide for the protection of lives and property for persons visiting or residing within the exterior boundaries of the Pine Ridge Indian Reservation." (Docket 34-2 at p. 27 [Sec.2(A)]). The OSTPSC is delegated the authority to enforce the Oglala Sioux Tribe Law and Order Code. Id. [Sec. 2(B)(2)]. The contract requires that OSTPSC "shall assist the [BIA], and other federal, tribal and state law enforcement officials in the investigation of tribal, state or federal offenses that occur on the reservation." Id. at p. 29 [Sec. 2(F)]. Reinforcing the obligation to uphold tribal and federal law, the contract provides that OSTPSC "shall ensure that the Patrol Division of Law Enforcement

---

[3] "Mr. Janis does not attack the sufficiency of the 638 contract." (Docket 40 at p. 4).

[4] The term of the 638 contract was initially for the period "commencing October 1, 2007 and ending September 30, 2010." (Docket 34-2 at p. 66 [Sec. 3]). Re-authorization was extended through FY 2013. See Docket 34-1 at p. 1.

(uniformed police) . . . shall enforce the Oglala Sioux Tribe Law and Order Code . . . ." Id. at pp. 32-33 [Sec. 2(I)(3)(a)].

Defendant's motion to dismiss is the same issue presented in Bettelyoun, 16 F.3d 850.

> Prior to trial, Bettelyoun moved to dismiss the assault charge on the ground that the tribal officers were enforcing tribal laws at the time of the alleged offense and therefore were not federal officers for purposes of § 111. The government responded that BIA had delegated its law enforcement function on the Pine Ridge Reservation to the Oglala Sioux Tribe under a contract of the type described in 25 U.S.C. § 2804(a), and had designated the assaulted tribal officers to carry out BIA's functions under that contract, thus making them federal officers for purposes of § 111 under 25 U.S.C. § 2804(f).

Id. at 852. In Bettelyoun, the district court found and instructed the jury that "[t]ribal officers who are employed by a tribe under a contract with the Bureau of Indian Affairs and who are specially commissioned deputy officers by the Bureau of Indian Affairs are federal officers for the purposes of 18 U.S.C. § 111. . . ." Bettelyoun, 16 F.3d at 852. Mr. Bettelyoun objected to this instruction, but the Court of Appeals held the "issue was not preserved by his general objection to the district court's instruction." Id. Thus, the Court of Appeals conducted only a plain error review of the instruction. Id.

The Court of Appeals held "[w]hen the government relies upon 25 U.S.C. § 2804(f) to establish that the assaulted tribal officer is a federal officer for purposes of § 111, the court must determine threshold legal questions—whether the tribal contract, and the manner in which BIA has designated particular tribal officers to perform under that contract, qualify

7

under 25 U.S.C. § 2804(a)." Id. at p. 853. "But the ultimate issue of fact—whether the assaulted tribal officers were engaged in the performance of duties authorized by the Secretary of Interior at the time of the assault—is still for the jury." Id. The court went on to say, "[i]n other words, the court should instruct the jury as to the classes of persons who are federal officers under 18 U.S.C. § 1114, as modified by 25 U.S.C. § 2804(f), leaving the jury to decide whether the government proved beyond a reasonable doubt that the assault victims were in fact federal officers who were engaged in the performance of their official duties." Id. Having concluded the district court properly followed this procedure, the Court of Appeals held "there was no plain error; indeed, there was no error at all." Id.

The court finds that the 638 contract is a proper delegation of authority under 25 U.S.C. § 2804(a) to the Oglala Sioux Tribe Public Safety Commission and that the contract authorized Officer Mousseau to enforce both federal and tribal laws. The court finds as a matter of law that Officer Mousseau was a federal officer for purposes of 18 U.S.C. § 111 at the time of the alleged assault. See Bettelyoun, 16 F.3d at 853; Drapeau, 644 F.3d at 653. This finding is consistent with the decisions of the United States Court of Appeals for the Eighth Circuit in Schrader, Bettelyoun, Drapeau, and Roy.

"Engaged in performance of official duties is simply acting within the scope of what the agent is employed to do. . . . The scope of what the agent is employed to do is not defined by whether the officer is abiding by laws

and regulations in effect at the time of the incident, nor is the touchstone whether the officer is performing a function covered by his job description . . . . Thus, the test is whether the officer is acting within the scope of his employment, that is, whether the officer's actions fall within his agency's overall mission . . . ." Drapeau, 644 F.3d at 652-53 (internal citation and internal quotation marks omitted).

Whether at the time of the alleged assault Officer Mousseau was acting as a federal officer performing law enforcement functions or engaging in a "personal frolic of [her] own" remains a jury question.  See Schrader, 10 F.3d at 1350-51; Drapeau, 644 F.3d at 653.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that the defendant's motion to dismiss (Docket 27) is denied.

Dated August 14, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

9